IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION

**ROSIE MARIE COBBS**                                                                **PLAINTIFF**

**V.**                                                    **CIVIL ACTION NO.:4:20-CV-207-DAS**

**KILOLO KIJAKAZI, ACTING**
**COMMISSIONER OF SOCIAL SECURITY**                                    **DEFENDANT**

## MEMORANDUM OPINION AND JUDGMENT

The plaintiff, Rosie Marie Cobbs, seeks judicial review of the Social Security Administration's decision denying her application for Supplemental Security Income. She asserts error in the evaluation of the opinions of a consulting examiner and a lay person statement. The court, having reviewed and considered the record, briefs and oral argument and having considered the applicable regulations and case law in this matter, finds no error. Accordingly, the court affirms the decision of the Commissioner of Social Security.

### Facts

The plaintiff, Rosie Marie Cobbs, filed for benefits on April 2, 2018, alleging she became disabled February 24, 2018. The Social Security Administration denied the claim initially and on reconsideration. Following a hearing, the ALJ issued an unfavorable decision on October 31, 2019. (Dkt. 13, p. 14-23).[1] The Appeals Council denied the request for review, and this timely appeal followed.

The ALJ determined Cobbs had the following severe impairments: anxiety, depression, psychosis, and obesity. The ALJ found she retained the residual functional capacity (RFC) to

---

[1] The administrative record is Docket 13. Unless otherwise indicated, all references are to the administrative record. The page cites are to the court's numbering system, rather than the administrative numbering.

1

perform work at all exertional levels with nonexertional limitations. She can understand, remember, and carry out short, simple instructions. The plaintiff can sustain focus and attention for two-hour periods and can make simple, work-related decisions. She is limited to occasionally interacting with coworkers and supervisors but can never interact with the general public. Cobbs can adapt to occasional changes in the workplace and needs a low stress work environment. The ALJ determined she had no past relevant work experience. Cobbs was forty-nine years old at the date of application, which is a younger individual, but crossed over to the closely approaching advanced age category during the pendency of the application. She has a limited education but can communicate in English. Based on the testimony of the vocational expert, the ALJ found Cobbs could perform the requirements for other jobs in the national economy.[2] Because other work was available within her RFC, the ALJ decided the plaintiff was not disabled through the date of the decision.

## Analysis

In the present case, the plaintiff argues the ALJ's decision understates the extent of Rosie Cobbs' limitations from her mental illnesses. On February 26, 2018, Cobbs was admitted to the University of Mississippi Medical Center at Grenada with an altered mental status. On that date, her daughter reported being awakened when Cobbs started yelling and screaming at her. She was saying her daughter was evil and would kill her granddaughter if she touched her. She ran outside in her night clothes and chased a neighbor and his wife. She threw trash all over a parking lot. She was reported not to have slept in a week and to have been under stress, though the family did not verbalize the source of her stress. She was not responsive when she arrived but

---

[2] The vocational expert testified she could work as a laundry worker, cleaner and dishwasher. Each job is performed at the medium level of exertion with an SVP of 2. These three jobs combined offer 8.5 million jobs in the national economy.

moved to painful stimuli. R. 260. Because she was aggressive with staff on the first night, Cobbs was medicated with Ativan and Haldol. Her family reported no previous similar episodes, though she had been depressed lately. R. 263. Cobbs later in treatment reported being stressed because she was still on probation after being convicted of a crime five years earlier. Cobbs reported a similar episode two years earlier when she went to an emergency room but that she had not been admitted. R. 266. The hospital records note this is a new, not chronic, problem. R. 251. Cobbs denied any prior psychiatric history. R. 303.

A few days after her admission, Cobbs was cleared medically and transferred to the Crisis Center on March 1, 2018. She was discharged from UMMC Grenada with a diagnosis of depression with psychotic symptoms. She was treated at inpatient treatment at the Crisis Center through March 14, 2018 and an anti-psychotic medication was prescribed. R. 305. After discharge she was followed on an outpatient basis at Life Care.

The plaintiff argues the ALJ erred in the analysis of medical opinions of Dr. Michael Whelan, a consultative examiner, and in the assessment of the opinion of Sundra Quinn, a county administrator. The ALJ rejected Quinn's opinion because she is not an acceptable medical source and because her opinion was too close in time to the claimant's hospitalization to allow Cobbs' medications to become effective. The court finds no error on this issue. Quinn is not an acceptable medical source, and, though no longer required by regulations, the ALJ provided a rationale for discounting her statement.

The plaintiff's primary argument centers on the analysis of the report and opinions of Dr. Michael Whelan, a consulting examiner. The plaintiff contends the ALJ improperly found his opinions were not persuasive. In addition to his written report, Whelan provided a checklist of impairments that would impact Cobbs' ability to work, including poor ability to interact with co-

workers and supervisors; deal with the public; cope with work stressors; and demonstrate reliability. R. 368-373. If credited, Cobbs argues Whelan's limitations would require a favorable finding.

The ALJ found Whelan's opinion unpersuasive because as Whelan noted in his report "the claimant likely exaggerated during the examination, rendering his assessment and opinions necessarily unreliable." The ALJ also noted that Cobbs was on Paxil and Rexulti and reported to Life Care that she liked the medications and found them helpful. He noted Life Care records in July, 2018 showed Cobbs had a euthymic mood. The court finds these statements provide sufficient reason and explanation for rejecting Whelan's opinion. The doctor's report was necessarily reliant on an informant who proved to be an unreliable one.

The plaintiff's problem here is that Cobbs' malingering casts doubt on most of Whelan's findings, including his repetition of her reports of depression, panic attacks and hearing voices. Cobbs reported five or six hospitalizations to Whelan. The record shows the single hospitalization split between two facilities in February and March 2018. She told Whelan she was hospitalized with psychotic symptoms for four weeks beginning in February of 2019, but her inpatient stay was in February 2018 and lasted for seventeen days.

Whelan conducted his examination on August 14, 2019, more than a year after the end of Cobb's hospitalization. He noted Cobbs exhibited poor judgment in malingering on the cognitive tasks. He estimated she had at least borderline intelligence. Life Care staff consistently estimated Cobbs had average intelligence. Whelan found Cobbs could manage her money and doubted her account that she had been seriously depressed since her husband's death twenty years earlier.

4

Furthermore, the records from Life Care largely contradict Cobbs' reports of her symptoms. While Cobbs painted a bleak picture of her condition to Whelan, the Life Care records from July, 2018 forward usually reported near normal mental status and consistently reported a euthymic mood. R. 346, 352, 356, 360, 363, and 364. These visit notes, covering through the end of the 2018, showed Cobbs mental status was within normal limits, except noting poor abstract reasoning and only fair insight and judgment.

Perhaps most significantly, Whelan noted "I think she probably has a genuine psychiatric disorder based on her prior hospitalizations and current medication." R. 369. He mentioned her current medications a second time. "Currently she takes Latuda and the choice of this medication would suggest that the staff at the Crisis Center and at Life Help thinks that she has genuine psychiatric problems." R. 371. While the ALJ has accounted for mental health problems in the RFC, Whelan focused on reports of psychotic symptoms despite anti-psychotic medications and opined Cobbs was more limited. But he clearly found it particularly significant that Cobb reported she was taking Latuda, an anti-psychotic medication.[3] Whelan's opinion about the seriousness of Cobbs illness and her prognosis are clearly dependent on the accuracy of Cobbs' medication claims and the records do not support Cobbs' claim.

Cobbs was put on anti-psychotic medications at the Crisis Center and maintained on them for a short time. But the Life Help records note that on May 1, 2018, Cobbs complained that the Latuda made her toss and turn, and the medication was discontinued. R. 329-30. Thereafter, the Life Help records show Cobbs was treated with anti-depressants and anti-anxiety medications. Her prescription records from Wal-Mart, covering from January 1, 2018 to January 22, 2019 show she was receiving the Paxil from Wal-Mart, plus Trazadone, which was added to aid her

---

[3] She was initially treated with Seroquel, but later switched to Latuda at the end of March 2018, because of pricing. R. 315.

5

sleeping in November, 2018. An October 23, 2018 report from Cobbs to the SSA, two months after Whelan's examination, shows her current medications to the SSA: Paroxetine(Paxil) and Rexulti, neither of which is an anti-psychotic. R. 235. The Life Care records show Cobbs was provided with samples of medication because of her financial struggles, and documents that she was approved for patient assistance so that she received the Rexulti through Life Care. But the Life Care records show no prescription for Latuda or other anti-psychotic after May 2018.

Based largely on Cobb's malingering, the record supports the ALJ's finding that Dr. Whelan's opinion was unpersuasive, and thus the court finds substantial evidence to support it .

**IT IS, THEREFORE, ORDERED AND ADJUDGED**, that the final decision of the Commissioner denying benefits is affirmed.

**SO ORDERED**, this the 24th day of February, 2022.

/s/ **David A. Sanders**
**U.S. MAGISTRATE JUDGE**